**Ex parte Debra May RUTHART.**

Court of Criminal Appeals of Texas.

Oct. 28, 1998.

---

Russell M. Webb, El Paso, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PER CURIAM.

Applicant filed this post-conviction application for a writ of habeas corpus in the trial court, which was then forwarded to this Court pursuant to Article 11.07, V.A.C.C.P. Applicant was convicted of two counts of driving while intoxicated. She was sentenced to five years in each case, to run consecutively. No appeal was taken from these convictions.

Applicant contends, *inter alia*, she is being denied mandatory supervision on her first sentence. She explains that, although her calendar time served plus her accrued good conduct time equal her first sentence, the Texas Department of Criminal Justice (TDCJ) is continuing to hold her on the first sentence rather than beginning her second sentence. The record confirms Applicant's factual allegation. We filed and set this application to determine whether this is lawful.

### I. Cognizability

Applicant's claim is cognizable under Art. 11.07. We have previously held that the duration of a prisoner's confinement and applicable time credits is a proper subject for an Art. 11.07 application for writ of habeas corpus. *Ex parte Canada*, 754 S.W.2d 660, 663 (Tex.Cr.App.1988).

### II. Facts of the Case

We initially remanded this application to the trial court in order to complete the record before us. The record now reflects that Applicant was sentenced to five years each in cause numbers 13,900 and 13,972. In cause number 13,972, the trial court ordered the sentence to be served consecutively with the sentence assessed in cause number 13,900.

On the date this record was prepared, Applicant had served 3 years, 10 months, and 3 days actual time on cause number 13,900. She had accumulated 3 years, 2 months, and

8 days of good conduct time. Thus, in total, she had accrued 7 years and 11 days of time credit.

## III. Arguments

At the time of Applicant's offenses in 1994, the law provided that a prisoner "shall be released to mandatory supervision ... when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." Article 42.18, § 8(c), V.A.C.C.P.[1] Exceptions exist for prisoners convicted of certain offenses and for prisoners whose judgment contains a deadly weapon finding. *Id.*[2] Neither of these exceptions pertains to Applicant. Because Applicant's calendar time plus her accrued good conduct time equal her first five-year sentence, and no exceptions exist, she argues that the statute provides that she must be released to mandatory supervision and begin serving her second sentence.

In response, the State refers to Article 42.18, § 8(d), V.A.C.C.P. (repealed 1997).[3] That section provides that Applicant cannot begin to serve her second sentence until her first sentence "ceases to operate." A sentence does not cease to operate until it has been served in full through calendar time or until a parole panel designates the date on which the prisoner would have been eligible for release on parole. *Id.* Significantly, eligibility for release on mandatory supervision is not mentioned as causing a sentence to "cease to operate" under § 8(d). Applicant contends that, although the phrase "mandatory supervision" is not included in § 8(d), it should be considered encompassed within the word "parole."

## IV. Discussion

■ When we interpret statutes, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Boykin v. State*, 818 S.W.2d 782,

785 (Tex.Cr.App.1991). We focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. *Ibid.* Thus, if the meaning of the statutory text should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning. *Ibid.* The exception is when application of a statute's plain language would lead to absurd consequences that the legislature could not possibly have intended; in such a case, we refer to extratextual factors to determine legislative intent. *Ibid.*

■ To resolve the issue at hand, we must consider the language of the two statutes in concert. Section 8(c) provides that a prisoner "shall be released to mandatory supervision ... when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." Art. 42.18, § 8(c).

Section 8(d) of Article 42.18 provided, in part, as follows:

(d)(1) If a prisoner is sentenced to consecutive felony sentences under Article 42.08 of this code, a parole panel shall designate during each sentence the date, if any, on which the prisoner would have been eligible for release on parole if the prisoner had been sentenced to serve a single sentence.

(2) For purposes of Article 42.08 of this code, the judgment and sentence of a prisoner sentenced for a felony, other than the last sentence in a series of consecutive sentences, cease to operate:

(A) when the actual calendar time served by the prisoner equals the sentence imposed by the court; or

(B) on the date a parole panel designates as the date on which the prisoner would have been eligible for release on

---

1. Now also located at V.T.C.A. Gov't Code § 508.147(a). The 75th Legislature repealed Article 42.18 and re-enacted it in the Government Code. However, that Legislature also amended portions of Article 42.18 without reference to its repeal. Therefore, the portions that were amended remain in Article 42.18 while also appearing in the Government Code. See V.T.C.A. Gov't Code § 311.031(c).

2. Now also located at V.T.C.A. Gov't Code § 508.149. See footnote 1.

3. Now located at V.T.C.A. Gov't Code § 508.150.

parole if the prisoner had been sentenced to serve a single sentence.

Art. 42.18, § 8(d).

The question is how these statutes affect an individual like Applicant who is serving consecutive sentences. Applicant argues that, since § 8(c) requires that she be released on mandatory supervision on her first sentence, she must begin serving her second sentence, and § 8(d) must be interpreted to include mandatory supervision as an event which causes the first sentence to cease to operate. However, Applicant's construction ignores the statutory language. Section 8(d) clearly does not include mandatory supervision as causing a sentence to cease to operate. Focusing our attention on the literal text of § 8(d), as *Boykin* instructs us to do, we are unable to conclude that mandatory supervision eligibility causes a sentence to cease to operate such that an inmate can begin serving his second consecutive sentence.

We are mindful that § 8(c) is a mandatory statute: it states that an inmate *shall* be released to mandatory supervision when his accumulated time equals the "maximum term" to which he was sentenced. Section 8(d) appears to conflict with that mandate by preventing an inmate with consecutive sentences from beginning his second sentence until his first sentence ceases to operate. To resolve this conflict, we consider the meaning of the phrase "maximum term" in § 8(c).

The Code Construction Act provides that words and phrases are to be read in context and construed according to the rules of grammar and common usage, unless they have acquired a technical or particular meaning, in which case they should be construed accordingly. V.T.C.A. Gov't Code § 311.011.[4] We must first determine whether "term" or "maximum term" have acquired a technical or particular meaning.

The phrase "maximum term" is not defined in Article 42.18. At the time of Applicant's offense, "term" was defined, in

pertinent part, in the Government Code as follows:

the term of confinement established by Section 8(d), Article 42.18, Code of Criminal Procedure, if the inmate is serving two or more sentences consecutively;

V.T.C.A. Gov't Code § 498.001(2)(B). The definition was specifically limited to that subchapter of the Government Code. Thus, for purposes of the Government Code, the "term" of an inmate who is serving consecutive sentences is equal to the time necessary to fulfill his two consecutive sentences, considering that he begins serving his second sentence at the time that his first sentence ceases to operate. Under this definition, an inmate's "term" is dependent upon when his first sentence ceases to operate, which will be the date on which a parole panel designates him as eligible for release on parole or the date that he has served the sentence in full through calendar time.

We believe this is a technical or particular meaning of "term." However, as noted previously, this definition is specifically limited to the Government Code. Gov't Code § 498.001. Prior to its presence in the Government Code, this definition appeared in the Texas Civil Statutes. Article 6181–1, V.A.C.S. At that time, the definition was limited to that Article. *Id.* We will not extend a definition beyond the chapter or article to which it is expressly limited. *See, e.g., Luciano v. State,* 906 S.W.2d 523, 524 (Tex. Cr.App.1995). Thus, we do not apply this technical meaning of "term" to Art. 42.18, § 8(c).

Given that we have been unable to discover a particular definition of "term" or "maximum term" to be applied to Art. 42.18, § 8(c), we must read the words in context and construe them according to the rules of grammar and common usage. Gov't Code § 311.011. The statute provides that an inmate is to be released to mandatory supervision when his accumulated time equals the "maximum term to which he was sentenced." Art. 42.18, § 8(c).

4. The Code Construction Act applies to the Code of Criminal Procedure to the extent that it has been amended or reenacted by the 60th or any subsequent legislature. V.T.C.A. Gov't Code

§ 311.002; *Barbee v. State,* 432 S.W.2d 78, 82 (Tex.Cr.App.1968), *cert. denied,* 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969).

For an inmate serving a single sentence, his "maximum term" would clearly be that sentence, for there is no other "term" that he is serving. For an inmate serving two or more concurrent sentences, we believe his "maximum term" must be the longest of the concurrent sentences, because this is the sentence that will keep him incarcerated for the longest amount of time. In the case of an inmate like Applicant who is serving consecutive sentences, we believe his "maximum term" must be the last sentence in the series of his consecutive sentences. We reach this conclusion because this is the only way to give effect to the word "maximum." If the phrase "maximum term" referred to an inmate's first sentence only, there would be no need to use the word "maximum." Rather, the statute would merely refer to the inmate's "term" or "first term." In order to give meaning to the word "maximum," the phrase "maximum term" must refer to the last sentence an inmate must serve, because, as with concurrent sentences, this is the sentence that will keep him incarcerated for the longest amount of time. Therefore, when an inmate is serving consecutive sentences, his "maximum term" for purposes of Art. 42.18, § 8(c), is the last sentence he must serve in the series.

Based on this definition of "maximum term," we now perceive no conflict between §§ 8(c) and 8(d). Section 8(c) is a general provision pertaining to mandatory supervision. In the case of an inmate serving consecutive sentences, it applies only to the inmate's last sentence. In addition, regarding consecutive sentences, the Legislature has provided the more specific provision of § 8(d), stating that an inmate cannot begin to serve his second sentence until his first sentence ceases to operate. Section 8(d) does not include mandatory supervision as causing a sentence to cease to operate. Therefore, an inmate serving consecutive sentences is not eligible for mandatory supervision on any but the last of his consecutive sentences.

This conclusion is buttressed by the legislative history behind the enactment of § 8(d). The language apparently originated in Senate Bill 51 in the 69th Legislature's First Called Session; it did not receive a hearing in that Session. It resurfaced as Senate Bill 20 in the Third Called Session of that Legislature and then again in Senate Bill 25 in the 70th Legislature's Regular Session. The author of the bills, Senator Barrientos, explained that the bill was in response to the "Grettenberg" case, known locally as the "choker rapist." Senator Barrientos explained that Grettenberg had been convicted of three violent crimes and sentenced to three consecutive sentences which totaled 123 years. However, he was released to parole after seven or eight years and committed another crime. The amendment to Art. 42.18 was an effort to ensure that inmates such as Grettenberg were not released on parole until they became eligible for parole on each consecutive sentence.[5] Although neither Senate Bill 51 in the 69th First Called Session, Senate Bill 20 in the 69th Third Called Session, nor Senate Bill 25 in the 70th Session ever became law, similar language existed in House Bill 680 and Senate Bill 341, both of the 70th Legislative Session, which did become law.[6]

Thus, the purpose of § 8(d) is to prevent inmates with consecutive sentences from be-

---

**5.** See, e.g., Tapes on S.B. 25, Senate Criminal Justice Committee, February 10, 1987, Tape 1, Side 1, Counter at 38–42; Tapes on S.B. 25, Senate Chamber Session, February 23, 1987, Tape 1, Side 1, Counter at 197–214. In addition, the bill analysis to S.B. 25 states the following: Senate Bill 25 would require the Board of Pardons and Paroles to consider consecutive sentences separately, not as a single sentence. Under this ruling, a prisoner, serving cumulative sentences one or more of which is for an aggravated offense, cannot begin to earn eligibility for parole on the second and subsequent offenses until he has earned eligibility for release on parole on each preceding sentence.

A subsequent bill analysis to S.B. 25 adds, "For example, in State v. Grettenberg, the defendant was released after serving only 8 years of cumulative sentence of 123 years … At present, Texas has no provisions concerning parole eligibility for prisoners serving cumulative sentences."

**6.** The main difference between the bills is that Senate Bills 51, 20 and 25 limited their provisions to cases involving aggravated offenses, while the language that was passed into law applies to all sentences whether aggravated or not.

ing released to parole simply because they have become eligible for release on parole on their first sentence. Instead, they must become eligible for release on parole on the first sentence, then the second sentence, and so on, before they may be released to parole.

Based on this history, we believe the omission of mandatory supervision from § 8(d) was intentional by the Legislature. At the time the statute was enacted, the concern was an inmate being paroled before serving each of his consecutive sentences. Mandatory supervision was not relevant because the case which prompted the legislation, the Grettenberg case, did not present a situation in which mandatory supervision eligibility had been achieved.

## V. Conclusion

Based on the definition of "maximum term" in § 8(c), we conclude that an inmate serving consecutive sentences is not eligible for mandatory supervision on any but the last in his series of sentences. Further, such inmates may not begin serving their second, or any subsequent, sentence until their first, or any prior, sentence ceases to operate as that phrase is defined in § 8(d). Eligibility for mandatory supervision does not cause a sentence to cease to operate under § 8(d). Mandatory supervision becomes available to such inmates only when they begin serving their final consecutive sentence.

Therefore, Applicant may not be released to mandatory supervision, even though her calendar time plus her accrued good conduct time equal her first sentence. The fact that she facially appears eligible for mandatory supervision does not control, because her eligibility for mandatory supervision on her first sentence does not cause that sentence to cease to operate. When Applicant's first sentence does cease to operate, either by her serving it in full through calendar time or by a parole panel designating her as eligible for release to parole, she will begin serving her second sentence. She will become eligible for mandatory supervision on her second sentence when her calendar time served plus her accrued good conduct time equal that sentence. The application for writ of habeas corpus is denied.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice, Institutional Division, Paroles Division, and Board of Pardons and Paroles Division.

MEYERS, J., filed a concurring opinion in which BAIRD, J. joined.

MEYERS, Judge, concurring.

The plain language of the statutes support the holding of the majority. *Majority op.* at 471–73. Despite reaching reasonable conclusions under a plain meaning analysis, the majority turns to legislative history in an effort to "buttress" its conclusions. *Majority op.* at 473–74; *but see Majority op.* at 471 (recognizing that court should not turn to extratextual factors unless "application of a statute's plain language would lead to absurd consequences that the legislature could not possibly have intended" citing *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991)); *see, e.g., State v. Stevenson*, 958 S.W.2d 824, 827–28 (Tex.Crim.App.1997)(where statutes unambiguous, court must give effect to plain meaning); *Brown v. State*, 943 S.W.2d 35, 37 (Tex.Crim.App.1997)(recognizing that inquiry into legislative history is "unnecessary and improper under Boykin" where court is able to "determine from the clues in the statutory language" the effect of the statute in the given situation). This is a violation of the Separation of Powers Clause, not to mention that it clutters our jurisprudence with dicta. I concur in the result only.

BAIRD, J., joins.