IN THE COURT OF CRIMINAL APPEALS


OF TEXAS


 




NO. AP-74,368






EX PARTE CHRISTOPHER LYNN COWAN, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM MADISON COUNTY






 Hervey, J., delivered the opinion for a unanimous Court. Johnson, J., filed a
concurring opinion.



OPINION 



 We filed and set this case to determine whether applicant should have been released to
mandatory supervision and to determine the projected maximum release (or discharge) date on his
prison sentence. The former issue is moot because applicant has been paroled. We, therefore,
address only the latter issue concerning the projected maximum release (or discharge) date on his
prison sentence.

 The record reflects that applicant was serving an 8-year sentence for a mandatory supervision
eligible offense in cause number 0243176D (1) with a calculated begin date of 4/30/84 (2) when he was
sentenced to15 years in cause number 8565 for an offense that was not mandatory supervision
eligible. This 15-year sentence was ordered to begin when the 8-year sentence in cause number
0243176D ceased to operate.

 Applicant contends that the 8-year sentence in cause number 0243176D ceased to operate
on 12/18/90, when he would have been automatically released to mandatory supervision had he not
committed the offense in cause number 8565. (3)

 [APPLICANT]: We will talk about that in a second. Let me give you the scenario.


 During the stay in TDC [applicant] lost a lot of good time, okay? But on December
18th of 1990 he had all of his good time restored. That's September 15th, 1990. He
didn't-he got some of his good time restored but he didn't have eight years, he had
like seven years and so many months so he couldn't have been released in September
of 1990.


 In December of 1990 he got the remainder of his 471 days of good time restored to
him and his eligible time, flat time plus good time plus work time on December 18th
equaled nine years plus. So as far as we are concerned, without thinking about any
type of retroactive-as if the stuff were never taken away from him, I think December
18th, 1990, is a good date that they had to open the door and let him out on his eight
year sentence if he never had gotten the fifteen year sentence.


 [THE STATE]: Just for Your Honor's benefit, that happens-the scenario that
[applicant] is relaying with a single sentence, where a person gets suddenly a bunch
of good conduct restored to them and long overdue with release, that happens with
some regularity. People get the good time back and all of a sudden after the
sentence-


 [APPLICANT]: That procedure has since ceased. But anyway, as of December 18th
we think they should have opened up the door and let him out on mandatory
supervision on the eight year sentence, without consideration of the additional fifteen
that he got in 1988 [in cause number 8565].


 TDC's policy at that particular time was to actually accumulate the sentences
together, that he would be serving a twenty-three year sentence instead of an eight
year sentence to discharge and then start serving a fifteen year sentence.

 

 Applicant, therefore, claims that the projected maximum release date on the 15-year sentence
in cause number 8565 is12/18/05. This is calculated by adding the 15-year sentence in cause number
8565 to the 12/18/90 date which applicant claims is the date that his 8-year sentence in cause number
0243176D ceased to operate.

 [APPLICANT]: Based on the first case ceasing to operate on December 18th, 1990,
then I would state that [the discharge date on the 15-year sentence in cause number
8565 would] be December 18th, 2005.


 The TDCJ claims that applicant's sentence in cause number 0243176D ceased to operate on
4/30/92 based on eight calendar years from its calculated begin date of 4/30/84. The TDCJ,
therefore, argues that applicant's projected maximum release date on the 15-year sentence in cause
number 8565 is 4/30/07. This is calculated by adding the 15-year sentence in cause number 8565
to the 4/30/92 date which the TDCJ claims is the date that applicant's 8-year sentence in cause
number 0243176D ceased to operate.

 Q. [MOVANT ]: Is it TDC's position that the [8-year sentence in cause number 0243176D]
would never cease to operate until [it] discharged day for day?


 A. [TDCJ OFFICIAL]: Technically, yes, that's when it would discharge.


 Q. Okay. In answering question number three, what is applicant's projected
maximum release date. As far as TDC classification is concerned it's twenty-three
years from the beginning date of April 30th, '84, which makes -as far as TDC
classification is concerned, the maximum expiration date on the twenty-three year
sentence is April 30th, 2007, correct?


 A. That's correct.


 Q. Which is twenty-three calendar years from April 30th, 1984, when the eight year
[sentence in cause number 0243176D] began, correct?


 A. Yes.


 Q. Began, correct?


 A. Yes.


 Q. So you're saying that his maximum projected release date on the fifteen year
sentence is April 30th, 2007, correct?


 A. That is the maximum.


 Q. You're not taking into consideration the date under mandatory release that you
would have had to open the [prison] door and kick him out on the [8-year sentence
in cause number 0243176D]?


 A. No, sir.


 Q. You're starting that at the very earliest, April 30th, 1992, which is the eight
calendar years day for day?


 A. For maximum purposes, yes.

 

 The habeas court made numerous findings of fact and conclusions of law. It ultimately found
that applicant's projected maximum release date is 4/30/07 (as claimed by the TDCJ) and
recommended that habeas corpus relief be denied.

 We first summarize the current law. Article 42.08(b), Tex. Code Crim. Proc., provides that
when an inmate, like applicant, has consecutive sentences, the second sentence commences when
the first sentence ceases to operate. (4) See Ex parte Kuester, 21 S.W.3d 264, 271 (Tex.Cr.App. 2000)
("completion of the sentence" has same meaning as "cease to operate"). Section 508.150(b), Tex.
Gov't. Code, provides that a sentence ceases to operate for Article 42.08 purposes when it is served
out in full day-for-day (actual calendar time) or on the date a parole panel designates as the date an
inmate would have been parole eligible had he been sentenced to serve a single sentence. (5) But,
Section 508.147(a), Tex. Gov't. Code, states the general rule that "a parole panel shall order the
release of an inmate who is not on parole to mandatory supervision when the actual calendar time
the inmate has served plus any accrued good conduct time equals the term to which the inmate was
sentenced." (6) 

 Applicant's claimed projected maximum release date of 12/18/05 hinges on the claim that
his 8-year sentence in cause number 0243176D ceased to operate on 12/18/90 when he would have
been automatically released on mandatory supervision on this sentence had he not committed the
offense in cause number 8565. This Court in Ex parte Ruthart rejected the claim that mandatory
supervision is an event which causes an inmate's first sentence to cease to operate. See Ex parte
Ruthart, 980 S.W.2d 469, 471-74 (Tex.Cr.App. 1998) (mandatory supervision did not cause first
sentence to cease to operate). This rested in large part on Ruthart's definition of "maximum term"
in former Article 42.18, § 8(c), Tex. Code Crim. Proc., most of which was reenacted in the
Government Code in Section 508.147(a). See Ruthart, 980 S.W.2d at 471 n.1, n.2, n.3; see also
Footnote 7.

 The habeas court's findings nevertheless state that "reasonable minds could conclude that
Ruthart was wrongly decided" because Ruthart placed "considerable stock" in the phrase "maximum
term" in former Article 42.18, § 8(c), without noticing that the term "maximum" was not included
in the statute when it was reenacted in the Government Code in Section 508.147(a). See Ruthart,
980 S.W.2d at 472-73. (7) But, Ruthart was applying and interpreting former Article 42.18, § 8(c),
which contained the term "maximum" and which is the law applicable to this case. (8)

 In addition, applying and construing only the word "term" in Section 508.147(a), and
deciding, contrary to Ruthart, that "term" for Section 508.147(a) purposes includes the first sentence
in a series of sentences creates its own problems as well. (9) But see Ruthart, 980 S.W.2d at 473
("maximum term" for purposes of former Article 42.18, § 8(c), is "the last sentence [an inmate] must
serve in the series"). Under this construction of "term," mandatory supervision still would not be
an event that would cause the first sentence to cease to operate as that is not one of the things
mentioned in Section 508.150 as causing a sentence to cease to operate. See Ruthart, 980 S.W.2d
at 471-72.

 If "term" for Section 508.147(a) purposes applied to the first sentence in a series of
sentences, it would be possible for an inmate to "spend twenty or thirty years on [mandatory
supervision], living and working in the community, a rehabilitated and contributing member of
society. When at last his [mandatory supervision] is complete and his sentence discharges, he must
then be returned to prison to begin serving his second sentence." See Kuester, 21 S.W.3d at 267. 
We decline to adopt this construction and we adhere to our prior decisions (10) that a sentence ceases
to operate when it is served out in full day-for-day or on the date a parole panel designates as the date
an inmate would have been eligible for release on parole if the inmate had been sentenced to serve
a single sentence. See Kuester, 21 S.W.3d at 270-71; Ruthart, 980 S.W.2d at 473-74; § 508.150(b).

 Habeas corpus relief is denied.

 Hervey, J.

Delivered: June 22, 2005

Publish

1. Applicant was serving this sentence concurrently with three other 8-year sentences for
mandatory supervision eligible offenses in cause numbers 0242063D, 0242065D and 0242158D. 
2. The habeas court's findings state that the calculated begin date on this sentence is 10/5/84. 
The record, however, does not support this finding. Applicant claims and TDCJ records confirm that
the calculated begin date on this sentence is 4/30/84.
3. Under the law applicable to applicant's case, had applicant not committed the offense in
cause number 8565, he would have been automatically released on mandatory supervision for the
offense in cause number 0243176D when his good conduct time added to his calendar time equaled
his sentence (8 years) for that offense. See Acts 1985, 69th Leg., R.S., ch. 427, § 2, 1985 Tex. Gen.
Laws 1549-55, repealed by Acts1997, 75th Leg., R.S., ch. 165, § 12.22, 1997 Tex. Gen. Laws 443.
4. Article 42.08(b) states:


 If a defendant is sentenced for an offense committed while the defendant was an
inmate in the institutional division of the Texas Department of Criminal Justice and
the defendant has not completed the sentence he was serving at the time of the
offense, the judge shall order the sentence for the subsequent offense to commence
immediately on completion of the sentence for the original offense.
5. Section 508.150(b) states:


 For the purposes of Article 42.08, Code of Criminal Procedure, the judgment and
sentence of an inmate sentenced for a felony, other than the last sentence in a series
of consecutive sentences, cease to operate:


 (1) when the actual calendar time served by the inmate equals the sentence
imposed by the court; or


 (2) on the date a parole panel designates as the date the inmate would have
been eligible for release on parole if the inmate had been sentenced to serve
a single sentence.
6. Section 508.147(a) states:


 Except as provided by Section 508.149, a parole panel shall order the release of an
inmate who is not on parole to mandatory supervision when the actual calendar time
the inmate has served plus any accrued good conduct time equals the term to which
the inmate was sentenced.
7. Compare former Article 42.18, § 8(c), (providing that inmate may be released to mandatory
supervision when the calendar time he has served plus any accrued good conduct time equal the
"maximum term" to which he was sentenced) (emphasis supplied) with current § 508.147(a)
(providing that inmate may be released to mandatory supervision when the calendar time he has
served plus any accrued good conduct time equal the "term" to which he was sentenced) (emphasis
supplied). 
8. Ruthart decided that, when an inmate is serving consecutive sentences, his statutory
"maximum term" for former Article 42.18, § 8(c), purposes is "the last sentence he must serve in the
series." See Ruthart, 980 S.W.2d at 473. According to Ruthart, this definition of "maximum term"
was necessary to resolve an apparent conflict between former Article 42.18, § 8(c), and former
Article 42.18, § 8(d), which is now codified in Section 508.147(a). Ruthart, 980 S.W.2d at 472,
stated:


 We are mindful that § 8(c) is a mandatory statute: it states that an inmate shall be
released to mandatory supervision when his accumulated time equals the "maximum
term" to which he was sentenced. Section 8(d) appears to conflict with that mandate
by preventing an inmate with consecutive sentences from beginning his second
sentence until his first sentence ceases to operate. To resolve this conflict, we
consider the meaning of the phrase "maximum term" in § 8(c).


(Emphasis in original).
9. Arguably, the "plain" language of Section 508.147(a) applies only to an inmate who has been
sentenced to a single term and does not apply to an inmate serving multiple sentences. This
interpretation would also resolve any conflict between former Article 42.18, § 8(c), and former
Article 42.18, § 8(d). See Ruthart, 980 S.W.2d at 472, see also Footnote 8. This interpretation of
Section 508.147(a) would also dispose of applicant's claim that his eligibility for mandatory
supervision for the offense in cause number 0243176D caused the sentence for that offense to cease
to operate. 
10. We also note that the Legislature has not changed these decisions. See State v. Medrano, 67
S.W.3d 892, 902-03 (Tex.Cr.App. 2002) (legislative silence after judicial interpretation of a statute
is some indication that the Legislature approves of this interpretation).