**Ex parte Christopher Lynn COWAN, Applicant.**

No. AP–74368.

Court of Criminal Appeals of Texas.

Sept. 14, 2005.

Stephen Christopher Taylor, Humble, for Appellant.

William C. Bennett, Crim. D.A., Madisonville, Matthew Paul, State's Attorney, Austin, for State.

## OPINION ON REHEARING

HERVEY, J., delivered the opinion for a unanimous Court.

We substitute this opinion for our June 22, 2005, opinion, which is withdrawn on the Court's own motion for rehearing. We filed and set this case to determine whether applicant should have been released to mandatory supervision and to determine the projected maximum release (or discharge) date on his prison sentence. The former issue is moot because applicant has been paroled. We, therefore, address only the latter issue concerning the projected maximum release (or discharge) date on his prison sentence.

The record reflects that applicant was serving an 8–year sentence for a mandatory supervision eligible offense in cause number 0243176D [1] with a calculated begin date of 4/30/84 [2] when he was sentenced to

---

1. Applicant was serving this sentence concurrently with three other 8–year sentences for mandatory supervision eligible offenses in cause numbers 0242063D, 0242065D and

0242158D. These offenses occurred before September 1, 1987.

2. The habeas court's findings state that the calculated begin date on this sentence is

15 years in cause number 8565 for an offense that was not mandatory supervision eligible. This 15–year sentence was ordered to begin when the 8–year sentence in cause number 0243176D ceased to operate.

Applicant contends that the 8–year sentence in cause number 0243176D ceased to operate on 12/18/90, when he would have been automatically released to mandatory supervision had he not committed the offense in cause number 8565.[3]

[APPLICANT]: We will talk about that in a second. Let me give you the scenario.

During the stay in TDC [applicant] lost a lot of good time, okay? But on December 18th of 1990 he had all of his good time restored. That's September 15th, 1990. He didn't—he got some of his good time restored but he didn't have eight years, he had like seven years and so many months so he couldn't have been released in September of 1990.

In December of 1990 he got the remainder of his 471 days of good time restored to him and his eligible time, flat time plus good time plus work time on December 18th equaled nine years plus. So as far as we are concerned, without thinking about any type of retroactive— as if the stuff were never taken away from him, I think December 18th, 1990, is a good date that they had to open the door and let him out on his eight year sentence if he never had gotten the fifteen year sentence.

[THE STATE]: Just for Your Honor's benefit, that happens—the scenario that [applicant] is relaying with a single sentence, where a person gets suddenly a bunch of good conduct restored to them and long overdue with release, that happens with some regularity. People get the good time back and all of a sudden after the sentence—

[APPLICANT]: That procedure has since ceased. But anyway, as of December 18th we think they should have opened up the door and let him out on mandatory supervision on the eight year sentence, without consideration of the additional fifteen that he got in 1988 [in cause number 8565].

TDC's policy at that particular time was to actually accumulate the sentences together, that he would be serving a twenty-three year sentence instead of an eight year sentence to discharge and then start serving a fifteen year sentence.

Applicant, therefore, claims that the projected maximum release date on the 15–year sentence in cause number 8565 is 12/18/05. This is calculated by adding the 15–year sentence in cause number 8565 to the 12/18/90 date which applicant claims is the date that his 8–year sentence in cause number 0243176D ceased to operate.

[APPLICANT]: Based on the first case ceasing to operate on December 18th, 1990, then I would state that [the discharge date on the 15–year sentence in

10/5/84. The record, however, does not support this finding. Applicant claims and TDCJ records confirm that the calculated begin date on this sentence is 4/30/84.

**3.** Under the law applicable to applicant's case, had applicant not committed the offense in cause number 8565, he would have been automatically released on mandatory supervi-

sion for the offense in cause number 0243176D when his good conduct time added to his calendar time equaled his sentence (8 years) for that offense. *See* Acts 1985, 69th Leg., R.S., ch. 427, § 2, 1985 Tex. Gen. Laws 1549–55, repealed by Acts 1997, 75th Leg., R.S., ch. 165, § 12.22, 1997 Tex. Gen. Laws 443.

cause number 8565 would] be December 18th, 2005.

The TDCJ claims that applicant's sentence in cause number 0243176D ceased to operate on 4/30/92 based on eight calendar years from its calculated begin date of 4/30/84. The TDCJ, therefore, argues that applicant's projected maximum release date on the 15–year sentence in cause number 8565 is 4/30/07. This is calculated by adding the 15–year sentence in cause number 8565 to the 4/30/92 date which the TDCJ claims is the date that applicant's 8–year sentence in cause number 0243176D ceased to operate.

Q. [MOVANT]: Is it TDC's position that the [8–year sentence in cause number 0243176D] would never cease to operate until [it] discharged day for day?

A. [TDCJ OFFICIAL]: Technically, yes, that's when it would discharge.

Q. Okay. In answering question number three, what is applicant's projected maximum release date. As far as TDC classification is concerned it's twenty-three years from the beginning date of April 30th, '84, which makes—as far as TDC classification is concerned, the maximum expiration date on the twenty-three year sentence is April 30th, 2007, correct?

A. That's correct.

Q. Which is twenty-three calendar years from April 30th, 1984, when the eight year [sentence in cause number 0243176D] began, correct?

A. Yes.

Q. Began, correct?

A. Yes.

Q. So you're saying that his maximum projected release date on the fifteen year sentence is April 30th, 2007, correct?

A. That is the maximum.

Q. You're not taking into consideration the date under mandatory release that you would have had to open the [prison] door and kick him out on the [8–year sentence in cause number 0243176D]?

A. No, sir.

Q. You're starting that at the very earliest, April 30th, 1992, which is the eight calendar years day for day?

A. For maximum purposes, yes.

The habeas court made numerous findings of fact and conclusions of law. It ultimately found that applicant's projected maximum release date is 4/30/07 (as claimed by the TDCJ) and recommended that habeas corpus relief be denied.

We first summarize the current law. Article 42.08(b), TEX.CODE CRIM. PROC., provides that when an inmate, like applicant, has consecutive sentences, the second sentence commences when the first sentence ceases to operate.[4] *See Ex parte Kuester*, 21 S.W.3d 264, 271 (Tex.Cr.App.2000) ("completion of the sentence" has same meaning as "cease to operate"). Section 508.150(b), TEX. GOV'T.CODE, provides that a sentence ceases to operate for Article 42.08 purposes when it is served out in full day-for-day (actual calendar time) or on the date a parole panel designates as the date an inmate would have been parole eligible had he been sentenced to serve a single sentence.[5] But, Section 508.147(a),

---

4. Article 42.08(b) states:

   If a defendant is sentenced for an offense committed while the defendant was an inmate in the institutional division of the Texas Department of Criminal Justice and the defendant has not completed the sentence he was serving at the time of the offense,

the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense.

5. Section 508.150(b) states:

TEX. GOV'T.CODE, states the general rule that "a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced."[6]

Applicant's claimed projected maximum release date of 12/18/05 hinges on the claim that his 8–year sentence in cause number 0243176D ceased to operate on 12/18/90 when he would have been automatically released on mandatory supervision on this sentence had he not committed the offense in cause number 8565. This Court in *Ex parte Ruthart* rejected the claim that mandatory supervision is an event which causes an inmate's first sentence to cease to operate. *See Ex parte Ruthart*, 980 S.W.2d 469, 471–74 (Tex.Cr. App.1998) (mandatory supervision did not

cause first sentence to cease to operate).[7] This rested in large part on *Ruthart's* definition of "maximum term" in former Article 42.18, § 8(c), TEX.CODE CRIM. PROC., most of which was reenacted in the Government Code in Section 508.147(a). *See Ruthart*, 980 S.W.2d at 471 n. 1, n. 2, n. 3; *see also* Footnote 7.

The habeas court's findings nevertheless state that "reasonable minds could conclude that *Ruthart* was wrongly decided" because *Ruthart* placed "considerable stock" in the phrase "maximum term" in former Article 42.18, § 8(c), without noticing that the term "maximum" was not included in the statute when it was reenacted in the Government Code in Section 508.147(a). *See Ruthart*, 980 S.W.2d at 472–73.[8] But, *Ruthart* was applying and interpreting former Article 42.18, § 8(c), which contained the term "maximum" and

For the purposes of Article 42.08, Code of Criminal Procedure, the judgment and sentence of an inmate sentenced for a felony, other than the last sentence in a series of consecutive sentences, cease to operate:
   (1) when the actual calendar time served by the inmate equals the sentence imposed by the court; or
   (2) on the date a parole panel designates as the date the inmate would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence.

6. Section 508.147(a) states:

Except as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced.

7. We further note that Vernon's Ann.Civ.Stat., Article 6181–1(4), which may also be applicable to this case, defines an inmate's "term" as the "aggregate of the several terms" when an inmate like applicant is serving consecutive sentences. *See* Acts 1977, 65th Leg., p. 932,

ch. 347, § 3, repealed by Acts 1989, 71st Leg., p. 968, ch. 212, § 3.03; *see also* Acts 1987, 70th Leg., p. 1890, ch. 384, § 8 (change in law to mandatory supervision statute "applies only to a prisoner sentenced to serve consecutive sentences if each sentence in the series is for an offense committed on or after [September 1, 1987]" and former law applies "if any sentence in the series is for an offense committed before the effective date of this Act"). This may even be dispositive of applicant's claim that his 8–year sentence in cause number 0243176D ceased to operate on 12/18/90 when he would have been automatically released on mandatory supervision on this sentence had he not committed the offense in cause number 8565.

8. *Compare* former Article 42.18, § 8(c), (providing that inmate may be released to mandatory supervision when the calendar time he has served plus any accrued good conduct time equal the **"maximum term"** to which he was *sentenced*) (emphasis supplied) *with* current § 508.147(a) (providing that inmate may be released to mandatory supervision when the calendar time he has served plus any accrued good conduct time equal the **"term"** to which he was sentenced) (emphasis supplied).

which is the law applicable to this case.[9]

In addition, applying and construing only the word "term" in Section 508.147(a), and deciding, contrary to *Ruthart*, that "term" for Section 508.147(a) purposes includes the first sentence in a series of sentences creates its own problems as well.[10] *But see Ruthart*, 980 S.W.2d at 473 ("maximum term" for purposes of former Article 42.18, § 8(c), is "the last sentence [an inmate] must serve in the series"). Under this construction of "term," mandatory supervision still would not be an event that would cause the first sentence to cease to operate as that is not one of the things mentioned in Section 508.150 as causing a sentence to cease to operate. *See Ruthart*, 980 S.W.2d at 471–72.

If "term" for Section 508.147(a) purposes applied to the first sentence in a series of sentences, it would be possible for an inmate to "spend twenty or thirty years on [mandatory supervision], living and working in the community, a rehabilitated and contributing member of society. When at last his [mandatory supervision]

is complete and his sentence discharges, he must then be returned to prison to begin serving his second sentence." *See Kuester*, 21 S.W.3d at 267. We decline to adopt this construction and we adhere to our prior decisions [11] that a sentence ceases to operate when it is served out in full day-for-day or on the date a parole panel designates as the date an inmate would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence. *See Kuester*, 21 S.W.3d at 270–71; *Ruthart*, 980 S.W.2d at 473–74; § 508.150(b).

Habeas corpus relief is denied.

JOHNSON, J., filed a concurring opinion.

JOHNSON, J., filed a concurring opinion.

I join the judgment of the Court because our current case law and the version of the mandatory-supervision statute that controls in this case require the majority's outcome. Whether intentionally or inad-

**9.** *Ruthart* decided that, when an inmate is serving consecutive sentences, his statutory "maximum term" for former Article 42.18, § 8(c), purposes is "the last sentence he must serve in the series." *See Ruthart*, 980 S.W.2d at 473. According to *Ruthart*, this definition of "maximum term" was necessary to resolve an apparent conflict between former Article 42.18, § 8(c), and former Article 42.18, § 8(d), which is now codified in Section 508.147(a). *Ruthart*, 980 S.W.2d at 472, stated:

We are mindful that § 8(c) is a mandatory statute: it states that an inmate *shall* be released to mandatory supervision when his accumulated time equals the "maximum term" to which he was sentenced. Section 8(d) appears to conflict with that mandate by preventing an inmate with consecutive sentences from beginning his second sentence until his first sentence ceases to operate. To resolve this conflict, we consider the meaning of the phrase "maximum term" in § 8(c).

(Emphasis in original).

**10.** Arguably, the "plain" language of Section 508.147(a) applies only to an inmate who has been sentenced to a single term and does not apply to an inmate serving multiple sentences. This interpretation would also resolve any conflict between former Article 42.18, § 8(c), and former Article 42.18, § 8(d). *See Ruthart*, 980 S.W.2d at 472, *see also* Footnote 8. This interpretation of Section 508.147(a) would also dispose of applicant's claim that his eligibility for mandatory supervision for the offense in cause number 0243176D caused the sentence for that offense to cease to operate.

**11.** We also note that the Legislature has not changed these decisions. *See State v. Medrano*, 67 S.W.3d 892, 902–03 (Tex.Cr.App.2002) (legislative silence after judicial interpretation of a statute is some indication that the Legislature approves of this interpretation).

vertently, when it created mandatory supervision the Legislature did not include it among the events that cause a sentence to "cease to operate" and trigger the commencement of a consecutive sentence. However, changes in the statute have now created "discretionary mandatory supervision," an oxymoron.

The current statute makes mandatory supervision a fraternal twin of parole; it is parole in everything but name and eligibility rules and both multiplies and complicates the work of the parole panels. Given that reality, the issue of whether discretionary mandatory supervision belongs among the events that triggers the commencement of a consecutive sentence, or should even continue to exist, is ripe for re-examination.