

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-75,705

**EX PARTE JOHN PATRICK FORWARD, Applicant**

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 46706(2) IN THE 252ND JUDICIAL DISTRICT COURT
### FROM JEFFERSON COUNTY

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. JOHNSON, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLCOMB, JJ., joined.

This case presents a complex problem involving the stacking of sentences and eligibility for mandatory supervision. What is important to keep in mind as we wade through a series of "savings clauses" is not to confuse the *when* of eligibility for release with the *whether* of eligibility for release. Running a sentence for a pre-1987 offense consecutively with a sentence for a post-1987 offense affects *when* an inmate is eligible to be released on mandatory supervision on the sentence for the later offense (if he can become eligible) but it does not affect *whether* the inmate is eligible on that sentence for mandatory supervision. Because the applicant in this case is ineligible for mandatory

supervision on his second sentence, he cannot ever be released to mandatory supervision on that sentence.

## I. BACKGROUND

Applicant committed an aggravated robbery in 1986. He was convicted of that offense in 1992, and punishment was assessed at confinement for eight years. Applicant was eligible for mandatory supervision on that sentence.[1] In 1999, while on mandatory supervision for the aggravated robbery conviction, applicant committed the offense of possession of a firearm by a felon. He was convicted of the firearm offense, and punishment was assessed at ten years. The sentence for the firearm offense was ordered to run consecutively with the sentence for the aggravated robbery offense. Absent the cumulation order, the firearm sentence would be considered ineligible for mandatory supervision.[2]

The Texas Department of Criminal Justice (TDCJ) has calculated applicant's sentences in the following manner: It first determined the mandatory supervision release date for the first sentence (aggravated robbery) in isolation and then it added the entire term of the second sentence (possession of a firearm) to that date to arrive at an overall mandatory supervision release date. Thus, TDCJ treated the second sentence as ineligible for mandatory supervision by delaying mandatory supervision release on the first sentence until the entire period of the second sentence had passed. Applicant contends that, due to a savings clause that affects his first sentence, both of his sentences should be added together and treated as a single eighteen-year sentence that is eligible for mandatory

---

[1] *See* TEX. CODE CRIM. PROC. art. 42.18, §8(c)(West 1986).

[2] *See* TEX. GOV'T CODE §508.149(a)(11)(West 1998)(a person is ineligible for mandatory supervision if he "has been previously convicted of . . . a first degree felony under Section 29.03 [aggravated robbery]").

supervision in its entirety. As a result of his proposed calculations, applicant contends that he is entitled to be released to mandatory supervision immediately.

## II. ANALYSIS

### A. The Changes in the Statutory Scheme

Before September 1, 1987, consecutive sentences were "added together and treated as one sentence" for the purpose of determining eligibility for release on parole and mandatory supervision[3] and for the purpose of determining an inmate's final discharge date.[4] This treatment was based upon the definition of "term" found in Article 6181-1.[5] Beginning September 1, 1987, parole eligibility is calculated separately for each sentence,[6] and mandatory supervision eligibility is calculated only for the final sentence in the series.[7] This change was accomplished by the addition of §8(d) to article 42.18 of the Code of Criminal Procedure.[8] In a different bill enacted that same year, the Legislature added the same language to §8(b).[9] The duplicate language in §8(b) was deleted two years later.[10]

---

[3] *Hannington v. State*, 832 S.W.2d 355, 355 (Tex. Crim. App. 1992).

[4] *Ex parte Cowan*, 171 S.W.3d 890, 893 n. 7 (Tex. Crim. App. 2005).

[5] *See Hannington* and *Cowan*, cited above. In relevant part, the statute provided, "When two or more sentences are to be served consecutively and not concurrently, the aggregate of the several terms shall be considered the term for the purposes of this Article." TEX. REV. CIV. ST. art. 6181-1, §1(4).

[6] TEX. CODE CRIM. PROC. art. 42.18, §8(d)(West 1988); *Hannington*, 832 S.W.2d at 355.

[7] *Ex parte Ruthart*, 980 S.W.2d 469, 471-74 (Tex. Crim. App. 1998)(construing art. 42.18, §8(c), (d)).

[8] Acts 1987, 70th Leg., Ch. 1101 (S.B. 341), §7.

[9] Acts 1987, 70th Leg., Ch. 384 (H.B. 680), §5; *see also Ex parte Choice*, 828 S.W.2d 5, 6 (Tex. Crim. App. 1992)(discussing the duplicate provisions).

[10] Acts 1989, 71st Leg., Ch. 785 (H.B. 2335), §5.01; *see also Choice*, 828 S.W.2d at 6.

But the Legislature made another significant change in the law in 1987 that is relevant to the present case: it amended §8(c) to specify, for the first time, that sentences for certain offenses would no longer be eligible for the mandatory supervision program.[11]  Nearly a decade later, this bar to mandatory supervision eligibility was extended to offenders who had been previously convicted of an offense on the ineligibility list, even if the sentence currently being served is not for an offense on that list.[12]

### B. The Savings Clauses[13]

The 1987 amendments contained multiple savings provisions, corresponding to changes in different subsections of the statute.  One of the savings provisions applied to the change in the law

---

[11]  Acts 1987, Ch. 1101, §7 (amending §8(c)); *see also* Acts 1987, Ch. 384, §6.

[12]  Acts 1995, Ch. 263 (H.B. 1433), §1, effective Sept. 1, 1996.

[13]  The portions of Article 42.18 at issue were recodified in 1997 into various provisions of §508 of the Government Code.  Applicant's second offense was committed after the recodification. TDCJ contends that the savings clauses found in the 1987 amendments to Article 42.18 are no longer effective because the Legislature did not carry forward the enabling clause when the recodification occurred.  But the codifying legislation did contain a provision that retained the savings clauses under the prior law:

> (a)  A transition or saving provision of a law codified by this Act applies to the codified law to the same extent as it applied to the original law.
>
> (b)  The repeal of a transition or saving provision by this Act does not affect the application of the provision to the codified law.
>
> (c) In this section, "transition provision" includes any temporary provision providing for a special situation in the transition period between the existing law and the establishment or implementation of the new law.

So the savings clauses found in the 1987 amendments did carry over into the 1997 recodification.

that required the separate computation of release dates for consecutive sentences:

> The change in law made by Section 7 of this Act by adding *Subsection (d)* to Section 8, Article 42.18, Code of Criminal Procedure . . . applies only to a prisoner sentenced to serve consecutive sentences if each sentence in the series is for an offense committed on or after the effective date of this Act. If any sentence in the series is for an offense committed before the effective date of this Act, the prisoner's eligibility for *parole* is covered by the law in effect when that offense was committed and the former law is continued in effect for that purpose.[14]

This savings provision retains prior law with respect to the stacking of sentences if any of the sentences in the series was for an offense committed before the effective date of the statute, but this provision is limited in scope. The first part of the savings clause paragraph explicitly applies only to the subsection (d) amendments, while the second part applies only to parole eligibility.

Neither part of the savings clause paragraph applies to the *subsection (c)* amendments specifying that sentences for certain offenses would be ineligible for the mandatory supervision program. The subsection (c) amendments were covered by a different savings clause paragraph:

> The change in the law made by Section 7 of this Act to *Section 8(c)*, Article 42.18, Code of Criminal Procedure . . . applies to a defendant's eligibility for release to mandatory supervision only if the defendant is sentenced for an offense committed on or after the effective date of this Act.[15]

This savings clause contained the more traditional wording, applying the change in the law to offenses committed after the effective date of the statutory amendment while retaining prior law for offenses committed before the effective date. This more traditional type of savings clause was used when the Legislature later expanded mandatory supervision ineligibility to inmates with prior

---

[14] Acts 1987, Ch. 1101, §18(e)(emphasis added). *See also* Acts 1987, Ch. 384, §8 (savings clause for duplicate provision).

[15] Acts 1987, Ch. 1101, §18(c)(emphasis added). *See also* Acts 1987, Ch. 384, §9.

convictions that were on the ineligibility list.[16]

So, while the savings clause applicable to §8(d) requires that we use pre-1987 law for determining *when* an inmate is eligible for mandatory supervision on the sentence for his post-1987 offense, the savings clause applicable to §8(c) requires that we use post-1987 law to determine *whether* he is eligible for mandatory supervision on that sentence. A seeming conflict occurs because *whether* an inmate is eligible for mandatory supervision affects *when* he is eligible for mandatory supervision (never) and makes it difficult to calculate multiple sentences as a unit when at least one of the sentences can become eligible for mandatory supervision and one of the sentences cannot.

### C. Reconciling the Provisions

When engaging in statutory construction, we generally presume that "the entire statute is intended to be effective."[17] When statutory amendments made in the same legislative session do not reference each other, "the amendments shall be harmonized, if possible, so that effect may be given to each."[18] Also, the Code of Criminal Procedure expressly provides that its provisions "shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression, and punishment of crime."[19]

---

[16] Acts 1995, Ch. 263, §3.

[17] TEX. GOV'T CODE §311.021.

[18] TEX. GOV'T CODE §§311.025(b).

[19] TEX. CODE CRIM. PROC. art. 1.26. Arguably this provision overrides the "rule of lenity." It is more strongly worded than the Penal Code counterpart that provides, "The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." TEX. PEN. CODE §1.05(a). Even if the "rule of lenity" applies to the construction of the

The Legislature specifically sought to deny the benefit of mandatory supervision to offenders who committed certain types of offenses. Permitting the §8(d) savings clause to override a defendant's mandatory supervision ineligibility frustrates the plain legislative intent. The frustration of the Legislature's objectives would be seen most clearly in the context of offenses committed while the defendant is still in prison, for which consecutive sentencing is mandatory.[20] The obvious legislative intent of the mandatory stacking provision was to require that prisoners receive extra punishment for committing crimes in prison. But a prisoner who commits a mandatory-supervision-ineligible crime near the end of serving a long pre-1987 sentence could be subject to release much sooner if he is deemed mandatory supervision eligible on the combined consecutive sentence than if the new mandatory-supervision-ineligible sentence were to run *concurrently*. And TDCJ would be forced to release him at that earlier mandatory supervision date because, even if the new crime were committed after the enactment of the "discretionary" mandatory supervision provisions,[21] the same logic that would prevent the application of an absolute bar to mandatory supervision would also preclude the post-1996 (and thus post-1987) statutorily-conferred discretion to deny release.

Even when stacking is not mandatory, however, frustration of the Legislature's intent would still be evident. A trial judge who stacks a sentence does so to punish the defendant more harshly than if the sentences run concurrently, but the applicant's position, if adopted, would  allow the

---

Code of Criminal Procedure, it provides the rule of decision only "when both alternative choices or definitions are more-or-less equally reasonable." *Cuellar v. State*, 70 S.W.3d 815, 823 n. 8 (Tex. Crim. App. 2002)(Cochran, J., concurring).

[20] TEX. CODE CRIM. PROC. art. 42.08(b).

[21] *See* TEX. GOV'T CODE §508.149(b); *see also* TEX. CODE CRIM. PROC. art. 42.18, §8(c-1)(West 1996).

reverse to occur. The present case is a good example: The applicant was sentenced in 1999 for ten years on a mandatory-supervision-ineligible sentence. Had that sentence been run concurrent to the prior sentence, TDCJ would have been required to release the applicant in 2009, when the sentence discharged (although he could have been paroled before then). Applicant's position would require TDCJ to release him immediately, even though the trial court undoubtedly believed he was punishing applicant more severely by running the sentences consecutively.

The statutory provisions can be harmonized to avoid such odd results. When sentences involving both pre- and post-1987 offenses are stacked, the savings clause relating to §8(d) would operate in a straightforward fashion to treat those sentences as one unit under prior law for the purpose of determining parole eligibility and for determining when the sentences discharge. The sentences would likewise be treated as one unit for the purpose of determining when a defendant is eligible for release on mandatory supervision for all sentences that are designated as eligible for mandatory supervision. The savings clause relating to §8(c)(and savings clauses relating to subsequent amendments to that subsection) would be given effect by denying mandatory supervision release for a period of time represented by all mandatory-supervision-ineligible sentences. Under this scheme, TDCJ would first calculate a release date for mandatory supervision for all the mandatory-supervision-eligible sentences as a unit, and then it would add the length of any mandatory-supervision-ineligible sentences to arrive at a final mandatory supervision release date. That is the procedure followed by TDCJ in the present case.

We deny relief.

Filed: July 2, 2008
Publish