**Ex parte John Patrick FORWARD, Applicant.**

**No. AP–75705.**

Court of Criminal Appeals of Texas.

July 2, 2008.

See also, 2006 WL 167839

John Patrick Forward, pro se.

Rodney D. Conerly, Asst. Criminal District Atty., Beaumont, Jeffrey L. Van Horn, State's Atty., Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined.

This case presents a complex problem involving the stacking of sentences and eligibility for mandatory supervision. What is important to keep in mind as we wade through a series of "savings clauses" is not to confuse the *when* of eligibility for release with the *whether* of eligibility for release. Running a sentence for a pre–1987 offense consecutively with a sentence for a post–1987 offense affects *when* an inmate is eligible to be released on mandatory supervision on the sentence for the later offense (if he can become eligible) but it does not affect *whether* the inmate is

eligible on that sentence for mandatory supervision. Because the applicant in this case is ineligible for mandatory supervision on his second sentence, he cannot ever be released to mandatory supervision on that sentence.

## I. BACKGROUND

Applicant committed an aggravated robbery in 1986. He was convicted of that offense in 1992, and punishment was assessed at confinement for eight years. Applicant was eligible for mandatory supervision on that sentence.[1] In 1999, while on mandatory supervision for the aggravated robbery conviction, applicant committed the offense of possession of a firearm by a felon. He was convicted of the firearm offense, and punishment was assessed at ten years. The sentence for the firearm offense was ordered to run consecutively with the sentence for the aggravated robbery offense. Absent the cumulation order, the firearm sentence would be considered ineligible for mandatory supervision.[2]

The Texas Department of Criminal Justice (TDCJ) has calculated applicant's sentences in the following manner: It first determined the mandatory supervision release date for the first sentence (aggravated robbery) in isolation and then it added the entire term of the second sentence (possession of a firearm) to that date to arrive at an overall mandatory supervision release date. Thus, TDCJ treated the second sentence as ineligible for mandatory supervision by delaying mandatory supervision release on the first sentence until the entire period of the second sentence had passed. Applicant contends that, due to a savings clause that affects his first sentence, both of his sentences should be added together and treated as a single eighteen-year sentence that is eligible for mandatory supervision in its entirety. As a result of his proposed calculations, applicant contends that he is entitled to be released to mandatory supervision immediately.

## II. ANALYSIS

### A. The Changes in the Statutory Scheme

 Before September 1, 1987, consecutive sentences were "added together and treated as one sentence" for the purpose of determining eligibility for release on parole and mandatory supervision[3] and for the purpose of determining an inmate's final discharge date.[4] This treatment was based upon the definition of "term" found in Article 6181–1.[5] Beginning September 1, 1987, parole eligibility is calculated separately for each sentence,[6] and mandatory supervision eligibility is calculated only for

---

1. *See* Tex.Code Crim. Proc. art. 42.18, § 8(c)(West 1986).

2. *See* Tex. Gov't Code § 508.149(a)(11)(West 1998)(a person is ineligible for mandatory supervision if he "has been previously convicted of . . . a first degree felony under Section 29.03 [aggravated robbery]").

3. *Hannington v. State*, 832 S.W.2d 355, 355 (Tex.Crim.App.1992).

4. *Ex parte Cowan*, 171 S.W.3d 890, 893 n. 7 (Tex.Crim.App.2005).

5. *See Hannington* and *Cowan*, cited above. In relevant part, the statute provided, "When two or more sentences are to be served consecutively and not concurrently, the aggregate of the several terms shall be considered the term for the purposes of this Article." Tex. Rev.Civ. St. art. 6181–1, § 1(4).

6. Tex.Code Crim. Proc. art. 42.18, § 8(d)(West 1988); *Hannington*, 832 S.W.2d at 355.

the final sentence in the series.[7] This change was accomplished by the addition of § 8(d) to article 42.18 of the Code of Criminal Procedure.[8] In a different bill enacted that same year, the Legislature added the same language to § 8(b).[9] The duplicate language in § 8(b) was deleted two years later.[10]

But the Legislature made another significant change in the law in 1987 that is relevant to the present case: it amended § 8(c) to specify, for the first time, that sentences for certain offenses would no longer be eligible for the mandatory supervision program.[11] Nearly a decade later, this bar to mandatory supervision eligibility was extended to offenders who had been previously convicted of an offense on the ineligibility list, even if the sentence currently being served is not for an offense on that list.[12]

### B. The Savings Clauses[13]

The 1987 amendments contained multiple savings provisions, corresponding to changes in different subsections of the statute. One of the savings provisions applied to the change in the law that required the separate computation of release dates for consecutive sentences:

> The change in law made by Section 7 of this Act by adding *Subsection (d)* to Section 8, Article 42.18, Code of Criminal Procedure ... applies only to a prisoner sentenced to serve consecutive sentences if each sentence in the series is for an offense committed on or after the effective date of this Act. If any sentence in the series is for an offense committed before the effective date of this Act, the prisoner's eligibility for *parole* is covered by the law in effect when that offense was committed and the former law is continued in effect for that purpose.[14]

This savings provision retains prior law with respect to the stacking of sentences if any of the sentences in the series was for an offense committed before the effective

---

7. *Ex parte Ruthart*, 980 S.W.2d 469, 471–74 (Tex.Crim.App.1998)(construing art. 42.18, § 8(c), (d)).

8. Acts 1987, 70th Leg., Ch. 1101 (S.B.341), § 7.

9. Acts 1987, 70th Leg., Ch. 384 (H.B.680), § 5; *see also Ex parte Choice*, 828 S.W.2d 5, 6 (Tex.Crim.App.1992)(discussing the duplicate provisions).

10. Acts 1989, 71st Leg., Ch. 785 (H.B.2335), § 5.01; *see also Choice*, 828 S.W.2d at 6.

11. Acts 1987, Ch. 1101, § 7 (amending § 8(c)); *see also* Acts 1987, Ch. 384, § 6.

12. Acts 1995, Ch. 263 (H.B.1433), § 1, effective Sept. 1, 1996.

13. The portions of Article 42.18 at issue were recodified in 1997 into various provisions of § 508 of the Government Code. Applicant's second offense was committed after the recodification. TDCJ contends that the savings clauses found in the 1987 amendments to Article 42.18 are no longer effective because the Legislature did not carry forward the enabling clause when the recodification occurred. But the codifying legislation did contain a provision that retained the savings clauses under the prior law:

> (a) A transition or saving provision of a law codified by this Act applies to the codified law to the same extent as it applied to the original law.
> (b) The repeal of a transition or saving provision by this Act does not affect the application of the provision to the codified law.
> (c) In this section, "transition provision" includes any temporary provision providing for a special situation in the transition period between the existing law and the establishment or implementation of the new law.

So the savings clauses found in the 1987 amendments did carry over into the 1997 recodification.

14. Acts 1987, Ch. 1101, § 18(e)(emphasis added). *See also* Acts 1987, Ch. 384, § 8 (savings clause for duplicate provision).

date of the statute, but this provision is limited in scope. The first part of the savings clause paragraph explicitly applies only to the subsection (d) amendments, while the second part applies only to parole eligibility.

Neither part of the savings clause paragraph applies to the *subsection (c)* amendments specifying that sentences for certain offenses would be ineligible for the mandatory supervision program. The subsection (c) amendments were covered by a different savings clause paragraph:

> The change in the law made by Section 7 of this Act to *Section 8(c)*, Article 42.18, Code of Criminal Procedure ... applies to a defendant's eligibility for release to mandatory supervision only if the defendant is sentenced for an offense committed on or after the effective date of this Act.[15]

This savings clause contained the more traditional wording, applying the change in the law to offenses committed after the effective date of the statutory amendment while retaining prior law for offenses committed before the effective date. This more traditional type of savings clause was used when the Legislature later expanded mandatory supervision ineligibility to inmates with prior convictions that were on the ineligibility list.[16]

So, while the savings clause applicable to § 8(d) requires that we use pre–1987 law

for determining *when* an inmate is eligible for mandatory supervision on the sentence for his post–1987 offense, the savings clause applicable to § 8(c) requires that we use post–1987 law to determine *whether* he is eligible for mandatory supervision on that sentence. A seeming conflict occurs because *whether* an inmate is eligible for mandatory supervision affects *when* he is eligible for mandatory supervision (never) and makes it difficult to calculate multiple sentences as a unit when at least one of the sentences can become eligible for mandatory supervision and one of the sentences cannot.

## C. Reconciling the Provisions

When engaging in statutory construction, we generally presume that "the entire statute is intended to be effective."[17] When statutory amendments made in the same legislative session do not reference each other, "the amendments shall be harmonized, if possible, so that effect may be given to each."[18] Also, the Code of Criminal Procedure expressly provides that its provisions "shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression, and punishment of crime."[19]

The Legislature specifically sought to deny the benefit of mandatory supervision to offenders who committed certain types of offenses. Permitting the § 8(d) savings

---

15. Acts 1987, Ch. 1101, § 18(c)(emphasis added). *See also* Acts 1987, Ch. 384, § 9.

16. Acts 1995, Ch. 263, § 3.

17. Tex. Gov't Code § 311.021.

18. Tex. Gov't Code § 311.025(b).

19. Tex.Code Crim. Proc. art. 1.26. Arguably this provision overrides the "rule of lenity." It is more strongly worded than the Penal Code counterpart that provides, "The rule

that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code." Tex. Pen.Code § 1.05(a). Even if the "rule of lenity" applies to the construction of the Code of Criminal Procedure, it provides the rule of decision only "when both alternative choices or definitions are more-or-less equally reasonable." *Cuellar v. State*, 70 S.W.3d 815, 823 n. 8 (Tex.Crim.App.2002)(Cochran, J., concurring).

clause to override a defendant's mandatory supervision ineligibility frustrates the plain legislative intent. The frustration of the Legislature's objectives would be seen most clearly in the context of offenses committed while the defendant is still in prison, for which consecutive sentencing is mandatory.[20] The obvious legislative intent of the mandatory stacking provision was to require that prisoners receive extra punishment for committing crimes in prison. But a prisoner who commits a mandatory-supervision-ineligible crime near the end of serving a long pre–1987 sentence could be subject to release much sooner if he is deemed mandatory supervision eligible on the combined consecutive sentence than if the new mandatory-supervision-ineligible sentence were to run *concurrently.* And TDCJ would be forced to release him at that earlier mandatory supervision date because, even if the new crime were committed after the enactment of the "discretionary" mandatory supervision provisions,[21] the same logic that would prevent the application of an absolute bar to mandatory supervision would also preclude the post–1996 (and thus post–1987) statutorily-conferred discretion to deny release.

Even when stacking is not mandatory, however, frustration of the Legislature's intent would still be evident. A trial judge who stacks a sentence does so to punish the defendant more harshly than if the sentences run concurrently, but the applicant's position, if adopted, would allow the reverse to occur. The present case is a good example: The applicant was sentenced in 1999 for ten years on a mandatory-supervision-ineligible sentence. Had that sentence been run concurrent to the prior sentence, TDCJ would have been required to release the applicant in 2009, when the sentence discharged (although he could have been paroled before then). Applicant's position would require TDCJ to release him immediately, even though the trial court undoubtedly believed he was punishing applicant more severely by running the sentences consecutively.

The statutory provisions can be harmonized to avoid such odd results. When sentences involving both pre- and post–1987 offenses are stacked, the savings clause relating to § 8(d) would operate in a straightforward fashion to treat those sentences as one unit under prior law for the purpose of determining parole eligibility and for determining when the sentences discharge. The sentences would likewise be treated as one unit for the purpose of determining when a defendant is eligible for release on mandatory supervision for all sentences that are designated as eligible for mandatory supervision. The savings clause relating to § 8(c)(and savings clauses relating to subsequent amendments to that subsection) would be given effect by denying mandatory supervision release for a period of time represented by all mandatory-supervision-ineligible sentences. Under this scheme, TDCJ would first calculate a release date for mandatory supervision for all the mandatory-supervision-eligible sentences as a unit, and then it would add the length of any mandatory-supervision-ineligible sentences to arrive at a final mandatory supervision release date. That is the procedure followed by TDCJ in the present case.

We deny relief.

JOHNSON, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLCOMB, JJ., joined.

---

20. TEX.CODE CRIM. PROC. art. 42.08(b).

21. *See* TEX. GOV'T CODE § 508.149(b); *see also* TEX.CODE CRIM. PROC. art. 42.18, § 8(c–1)(West 1996).

JOHNSON, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLCOMB, JJ., joined.

Effective September 1, 1987, the legislature amended the method of calculating release dates for inmates who are serving consecutive sentences.[1] Before that amendment, consecutive sentences were aggregated and treated as a single sentence equal to the sum of the consecutive sentences. After the amendment, sentences were no longer aggregated, and an inmate who is serving consecutive sentences is not now eligible for mandatory supervision on any but the last of the consecutive sentences. *Ex parte Ruthart,* 980 S.W.2d 469, 473 (Tex.Crim.App.1998).

In that amendment, the legislature included a saving clause that provided that this change applied "to a prisoner sentenced to serve consecutive sentences [only] if each sentence in the series is for an offense committed on or after [September 1, 1987]." If any sentence in the series was for an offense committed before September 1, 1987, "the prisoner's eligibility for parole is covered by the law in effect when that offense was committed, and the

former law is continued in effect for that purpose." Appellant's older conviction occurred before the effective date, and his later conviction occurred after it. We therefore are instructed by the legislature that the two consecutive sentences are to be treated as a single eighteen-year sentence.

Calculation of the mandatory-release date might thus be a simple thing, except that the same legislature proscribed release on mandatory supervision on or after September 1, 1987, of a prisoner who had been convicted of certain enumerated offenses. Such inmates must serve their sentences day-for-day unless they are paroled. Appellant's first conviction did not disqualify him for release on mandatory supervision at the time he committed the offense, but it now disqualifies him for mandatory supervision on his later conviction. Neither of the 1987 amendments specified how to calculate mandatory-release dates when an ineligible post–1987 offense is to be served consecutively to an eligible pre–1987 offense.

Four methods of computation are possible.

1. It is well settled that an inmate's eligibility for mandatory supervision is controlled by the mandatory-supervision statute in effect on the date of the commission of the offense for which the inmate is incarcerated. *Ex parte Noyola,* 215 S.W.3d 862, 865 (Tex.Crim.App. 2007); *Ex parte Thompson,* 173 S.W.3d 458, 459 (Tex.Crim.App.2005); *Ex parte Hall,* 995 S.W.2d 151, 152 (Tex.Crim.App.1999). At the time applicant committed the aggravated robbery in 1986, Article 6181–1, § 1(4), V.T.C.A., Civil Statutes, provided that, when two or more sentences are to be served consecutively, the aggregate of the several terms shall be considered the term. In 1987, that statute was amended to delete that provision and replace it with language referring to the newly added language of Tex.Code Crim. Proc., Article 42.18, § 8(b): TDCJ–SCC (referred to as the Texas Board of Corrections) may not treat consecutive sentences as a single sentence for purposes of parole. *See* Acts 1987,

70th Leg., ch. 384, §§ 2 and 5, eff. Sept. 1, 1987. Article 6181–1 was repealed in 1989 (*see* Acts 1989, 71st Leg., ch. 212, § 3.03, eff. Sept. 1, 1989), although that same legislature also amended the statute without acknowledging the repeal (*see* Acts 1989, 71st Leg., ch. 1229, § 1, eff. Aug. 28, 1989, and Acts 1989, 71st Leg., ch. 785, § 4.18, eff. June 15, 1989). The provision was repealed again in 1991. *See* 72nd Leg., ch. 16, § 10.01(b), eff. Aug. 26, 1991. The current version of § 508.149 excludes from release to mandatory supervision inmates who have previously been convicted of a variety of enumerated offenses, including aggravated robbery. Tex. Gov't.Code §§ 508.147, 508.149.

The legislature continues to prohibit treating consecutive sentences as a single sentence for purposes of parole. Tex. Gov't.Code § 508.150 (the current codification of Tex. Code Crim. Proc., Article 42.18, § 8(d)(3)).

1. The sentences are added together and treated as a single sentence that is eligible for mandatory supervision. This method conforms to the legislative instruction that the former law-as to both aggregation and eligibility for release on mandatory supervision-continues in effect, but it appears to violate the provision of the 1987 amendments that restricts eligibility for release for some offenses.

2. The sentences are added together and treated as a single sentence that is not eligible for mandatory supervision. This method violates *ex post facto* protections by retroactively making appellant's eligible first conviction ineligible.

3. The mandatory-supervision release date is calculated separately for each sentence. This method violates the provision of the saving clause that the sentences be aggregated into a single sentence, the length of which is the sum of the sentences.[2]

4. Because appellant's eight-year sentence, if considered alone, has discharged, the new version of § 508.147 applies. This comports with the interpretation apparently favored by TDCJ, but, like method 3, it violates the language of the saving clause.

No plain-language reading of the relevant statutes resolves these conflicts or indicates a legislative intent to apply one of these methods. A review of the audio tapes of the legislative committees that considered the 1987 amendments reveals that a situation such as the one presented here was never discussed. *Ex parte Ruthart*, 980 S.W.2d at 469; *Ex parte Choice*, 828 S.W.2d 5 (Tex.Crim.App.1992). None of our usual methods of statutory construction enable us to ascertain legislative intent as to this situation, and it appears that the conflicts in this situation can be resolved only by the legislature.

When legislative intent cannot be determined using the usual methods, the United States Supreme Court has for many years applied a doctrine commonly referred to as the Rule of Lenity. *See, e.g., Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."); *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955)(same).[3] Here, legislative intent cannot be ascertained, and the usual methods of statutory construction have proven fruitless. I therefore believe that application of the Rule of Lenity is appropriate. *See Cuellar v. State*, 70 S.W.3d 815, 821–26 (Tex.Crim.App.2002)(Cochran, J., concurring).

The Rule of Lenity requires application of the first method as the most lenient of the four possibilities. Using the first method of calculation also is consistent with interpreting the phrase "[i]f any sentence in the series is for an offense committed before the effective date of this Act, the prisoner's eligibility for parole is covered by the law in effect when that offense

---

**2.** This is the method that appears to be the choice of TDCJ–SCC.

**3.** When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read.

*Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955)

was committed, and the former law is continued in effect for this purpose" as applying to both the non-aggregation statute and the statute that provided that mandatory supervision applied to all sentences other than death.

### Conclusion

When applicant was sentenced for the aggravated robbery, only "a person under sentence of death" was ineligible for mandatory supervision. Because applicant was eligible for mandatory supervision on that initial sentence, he is likewise eligible for mandatory supervision release on the aggregated sentence. Nothing in the subsequent laws has abrogated the laws in effect at the time of that initial sentence, and the aggregation of both sentences pursuant to the saving clause means that they should be treated as a single sentence for a conviction that is eligible for mandatory supervision.

I conclude that applicant is entitled to relief. Because the previous laws regarding the sentence for the 1986 offense remained in effect, applicant is entitled to have his release date on the aggregated sentence calculated under those laws. Applicant's consecutive sentences should be calculated as an aggregated eighteen-year sentence on which applicant is eligible for mandatory supervision. I respectfully dissent.