**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 29, 2009

Charles R. Fulbruge III
Clerk

No. 07-10424

GILBERTO D. HERNANDEZ

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 06-CV-69

Before REAVLEY, WIENER, and SOUTHWICK, Circuit Judges.

WIENER, Circuit Judge:[*]

Petitioner-Appellant Gilberto Hernandez was sentenced to two consecutive terms of imprisonment. He contends that he had a legitimate expectation in the finality of his sentences which Texas, through Respondent-Appellee Nathaniel Quarterman, has frustrated by changing the method it used to calculate the way that his sentences would be served. This, Hernandez claims, entitles him to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

relief under the Double Jeopardy Clause of the Constitution. On the record before us, we are not able to resolve this claim, so we remand for the discovery and the evidentiary hearing that Hernandez requested and the district court denied.

## I. FACTS AND BACKGROUND

Hernandez committed aggravated robbery on March 30, 1986 in Hale County, Texas. On July 1, 1986, he pleaded guilty and was sentenced to eighteen years imprisonment ("sentence #1"). While in prison serving sentence #1, Hernandez committed attempted murder on May 2, 1988. For that offense, he was sentenced on March 20, 1989 to ten years imprisonment, to run consecutively to his sentence for aggravated robbery ("sentence #2").[1]

Taking into account various time credits, Texas calculated the begin-date of sentence #1 as February 2, 1986. Hernandez therefore had a calculated "day-for-day" sentence-completion date of February 2, 2004 for his aggravated robbery conviction. At the time that he committed the aggravated robbery, however, Texas provided for mandatory supervised release. Hernandez was therefore eligible to be released from prison and serve the remainder of his sentence on mandatory supervision once the total of his actual time served and good-conduct time equaled his sentence, calculated day for day.[2] Texas claims that this occurred on December 31, 1992.[3]

---

[1] A consecutive sentence is mandatory when, inter alia, a person commits a crime while incarcerated in the institutional division of the Texas Department of Criminal Justice. *See* TEX. CODE CRIM. P. 42.08(b) (Vernon 1985). This provision was in force at the time that Hernandez committed both of his crimes.

[2] TEX. CODE CRIM. P. 42.18 § 8(c) (Vernon 1985).

[3] Although Hernandez claims that he began to serve sentence #2 on October 31, 1993, the date we credit does not affect our conclusion. We shall use the date Hernandez advances because it better explains the timeline. If Texas's date is correct, it should have released Hernandez to mandatory supervised release on December 31, 2002; but it did not.

Nevertheless, a 1987 change to Texas's mandatory supervision laws made Hernandez ineligible for release to mandatory supervision on sentence #2.[4] He was therefore required to serve sentence #2 day for day. Texas claims that Hernandez began to serve sentence #2 when he became eligible for mandatory supervision on sentence #1, i.e., on December 31, 1992.

On October 31 or November 1, 2003,[5] after Hernandez had served sentence #2 day for day, Texas released him on mandatory supervision. Both parties agree that Hernandez served sentence #2 day for day, so this release on mandatory supervision had to have been for sentence #1. His Certificate of Mandatory Supervision listed February 2, 2014 as its maximum expiration date, which is the expiration date Hernandez would have had if he had been sentenced to a single twenty-eight-year term or if Texas had tacked the remainder of sentence #1's mandatory-supervision term – which Texas claims was tolled from October 31, 1993, until October 31, 2003 – onto the end of sentence #2.

On March 6, 2004, while out on mandatory supervision, Hernandez committed the crime of possession of a controlled substance and was sentenced to six months imprisonment. While he was serving that sentence, the Texas Board of Pardons and Paroles purported to revoke his supervised release for sentence #1. Hernandez is now scheduled for release on August 23, 2014.[6]

Before the district court, Hernandez claimed that, on February 2, 2004, he had developed a legitimate expectation in the finality of his sentences because at all relevant times Texas law specified that once a sentence commenced, it did

---

[4] TEX. CODE CRIM. P. art 42.18 § 8(c) (Vernon 1988).

[5] This is greater than ten years from December 31, 2002, but, as we explained *supra* note 3, Hernandez claims that sentence #2 did not begin to operate until October 31, 1993, the date on which sentence #1 ceased to operate, at least according to him.

[6] Texas added six months and twenty days to the maximum expiration date listed on Hernandez's Certificate of Mandatory Supervision because he was "out of custody" for that period of time.

not cease to operate. Sentence #1 commenced on February 2, 1986, and February 2, 2004 is eighteen years, day for day, from that commencement date. As for sentence #2, the parties agree that, at the latest, Hernandez began to serve it on October 31, 1993, because Texas used the date on which a prisoner was eligible for supervised release to calculate the commencement date of consecutive sentences. Sentence #2 was therefore served day for day on October 31, 2003, the very day on which Texas released Hernandez to supervision.

Hernandez contends that because of Texas's continuous operation rule, he effectively served sentence #1 *concurrently* with sentence #2, even though he was sentenced to *consecutive* sentences. Texas disagrees, contending that after it "constructively released" Hernandez on mandatory supervised release for sentence #1 – at the latest on October 31, 1993 – sentence #1 was held in abeyance while Hernandez served sentence #2 day for day. According to Texas, Hernandez therefore had to complete a period of supervised release for sentence #1 that did not end until twenty-eight years after he was sentenced to eighteen years for the underlying crime.

After the Texas courts denied Hernandez relief, he filed two pro se petitions for habeas corpus in federal court on May 27, 2006, asserting his entitlement to release on the basis of the Ex Post Facto, Double Jeopardy, and Due Process Clauses. The district court consolidated these petitions, declined Hernandez's request for discovery and an evidentiary hearing, and denied relief. Hernandez then asked the district court to grant a COA, which request was denied. He timely filed a motion with this court for a COA, which we granted for the double jeopardy claim on March 11, 2008. After the Texas Court of Criminal Appeals decided *Ex Parte Forward*,[7] we appointed counsel and ordered supplemental briefing and oral argument.

---

[7] 258 S.W.3d 151, 152 (Tex. Crim. App. 2008).

## II.  DISCUSSION

### A.    AEDPA's Time Bar

#### 1.    *Standard of Review*

We review the district court's legal conclusions and mixed questions of law and fact de novo, using the same standards as the district court.[8]  The district court's findings of fact are reviewed for clear error.[9]

#### 2.    *Analysis*

Texas asserted before the district court that Hernandez's petition is time-barred under AEDPA's one-year limitations period.[10]  The district court did not reach this issue, but Texas re-urges it here as an alternative ground for affirming.  We decline to exercise our discretion to affirm on this basis, however, finding instead that there are genuine issues of material fact as to whether Hernandez is entitled to equitable tolling.

"Equitable tolling is appropriate in rare and exceptional circumstances"[11] because AEDPA's "one-year limitations provision does not operate as a jurisdictional bar."[12]  When the government has "actively misled . . . the defendant about the cause of action," equitable tolling is appropriate.[13]  Assuming arguendo that Hernandez either knew or should have known the factual predicate of his claim on the date that he received the Certificate of Mandatory Supervised Release listing an expiration date in 2014, he also insists

---

[8]  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).

[9]  *Id.*

[10]  28 U.S.C. § 2244(d)(1) (2006).

[11]   *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (internal quotation marks omitted).

[12]  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation marks omitted).

[13]  *Id.*

— with specificity — that he was affirmatively misled by Texas about the meaning of that 2014 date. According to Hernandez, he did not learn that he had been misled until Texas purported to "revoke" his mandatory supervised release. When we deduct the time during which he pursued relief in state proceedings that tolled AEDPA's limitations period, Hernandez filed the instant petition less than one year after he learned that his mandatory supervised release had been revoked. As a result, if Hernandez is entitled to equitable tolling for the period between the time that he received the Certificate and the time that he learned that he had been misled (if in fact he had been misled), then his petition is timely. It is for the district court to address this argument in the first instance on remand.

## B. Double Jeopardy

### 1. Standard of Review

Again, we review legal questions and mixed questions of law and fact de novo, using the same standards applied by the district court.[14] Any findings of fact are reviewed for clear error.[15] A district court's denial of discovery or an evidentiary hearing in a habeas proceeding is reviewed for abuse of discretion.[16] A district court abuses its discretion by denying discovery or an evidentiary hearing when there "is a factual dispute which if resolved in the petitioner's favor, would entitle [the petitioner] to relief and the state has not afforded the petitioner a full and fair hearing."[17]

### 2. Analysis

#### a. AEDPA

---

[14] *Valdez*, 274 F.3d at 946.

[15] *Id.*

[16] *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000).

[17] *Id.* (internal quotation marks omitted) (alteration in original).

Under AEDPA, before a petitioner is entitled to relief, he must show that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[18] A decision by a state court is "contrary to" clearly established Supreme Court precedent when it "applies a rule that contradicts the governing law set forth in [the Court's] cases," or reaches an opposite result from a Supreme Court case with facts that are "materially indistinguishable."[19] A state court's decision is an "unreasonable application of [the] Court's precedent if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular . . . case."[20] A state court's decision "also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."[21] For this standard to be met, the state court's decision must be both incorrect and objectively unreasonable.[22]

Section 2254(e)(2) provides that if the petitioner "has failed to develop the factual basis of a claim in State court proceedings, the [district] court shall not hold an evidentiary hearing on the claim" except in certain limited circumstances.[23] If a state court does not allow discovery, however, or if the

---

[18] 28 U.S.C. § 2254(d); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

[19] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring) (announcing the opinion of the court).

[20] *Id.* at 407.

[21] *Id.*

[22] *Id.* at 409-11.

[23] 28 U.S.C. § 2254(e)(2).

"failure to develop the factual basis is [otherwise] not directly attributable to a decision or omission of the petitioner," then § 2254(e)(2) does not apply and the district court may exercise its discretion to order an evidentiary hearing or discovery.[24] Because Texas did not permit Hernandez to develop the factual basis of his double jeopardy claim, AEDPA permits an evidentiary hearing. And if, under the standard of review announced above, we conclude that material facts are unresolved, the district court abused its discretion in failing to order discovery and a hearing.

   b.    Merits

The Double Jeopardy Clause protects two primary interests. First, it prohibits retrial of a defendant on the same offense after acquittal or conviction.[25] That is not the type of double jeopardy claim interest that is at issue in this case. The second interest protected is the prohibition against multiple punishments for the same offense.[26] The Supreme Court has clearly announced the rule that a sentence adjustment that disturbs a person's legitimate "expectation of finality in [a] sentence" violates the prohibition against multiple punishments.[27] It would be unreasonable to conclude that a double-jeopardy violation has not occurred if: (1) a prisoner legitimately, i.e., reasonably, believed that his sentence would end on a date certain; (2) that date comes; (3) the state takes some action consistent with a completed sentence; and (4) the state thereafter reincarcerates that former prisoner because of a change in the way that the state calculates sentences.[28]

---

[24] *Clark*, 202 F.3d at 765.

[25] *Jones v. Thomas*, 491 U.S. 376, 381 (1989).

[26] *Id.*

[27] *United States v. DiFrancesco*, 449 U.S. 117, 136 (1980).

[28] *See id.* at 136; *In re Bradley*, 318 U.S. 50, 52 (1943).

Hernandez contends that under the rules governing the calculation of his sentences at all times preceding the 2008 decision in *Ex Parte Forward*, he had served the entirety of sentence #2 by October 31, 2003, and the entirety of sentence #1 by February 2, 2004. If he is correct, then he has "satisfied" "one valid alternative" construction of his sentence, vesting in him an expectation that further review would not reallocate his consecutive sentences in a manner extending his term, i.e., imposing another "valid alternative" of how he should serve a combined twenty-eight year sentence.[29]

We cannot resolve the constitutional questions Hernandez presents without (1) discovery sufficient to reveal how, pre-*Forward*, Texas calculated sentence completion dates in cases like Hernandez's; and (2) a hearing on any facts underlying the mixed question of law and fact of the reasonableness of the belief of a prisoner in Hernandez's position that his sentence was final on February 2, 2004. As stated above, such an inquiry will necessarily include a determination whether Hernandez's claims are time-barred. We therefore remand to the district court with instructions to order the necessary discovery and to conduct an evidentiary hearing limited to these issues. Given the limited nature of our remand, we retain jurisdiction pending the resolution of those issues and any facts subsidiary to their determination.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and this case REMANDED; and we RETAIN jurisdiction over this case pending the conclusion of the proceedings here ordered to be conducted on remand.

---

[29] *In re Bradley*, 318 U.S. at 52.

REAVLEY, Circuit Judge, dissenting:

I must disagree. The majority does not explain what the expectation is or how Hernandez has raised an issue that warrants remand for a hearing and judicial action. From the briefs, I assume that Hernandez has speculated about Texas law on the calculation of sentence completion of two consecutive sentences after the prior sentence is eligible for mandatory supervised release, but the Texas Court of Criminal Appeals has answered that question. In *Ex Parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008), that court did so, changing no law, and Hernandez's sentence complies. I see no basis for a legitimate expectation contrary to Texas law.

The Respondent's calculation of the release date for Hernandez's two consecutive sentences is in accord with state law as announced in *Forward*, 258 S.W.3d at 155. The court there instructed that when, like Hernandez, a defendant's stacked sentences involve both pre- and post-1987 offenses, the state should calculate a mandatory supervised release date for the release-eligible sentence and then add the length of any release-ineligible sentences to arrive at a final mandatory supervised release date. *Id.* In effect, this is what the state did here.

Hernandez was sentenced to 18 years for burglary, an offense that was eligible for supervised release. Two years later, he was sentenced to a

consecutive ten-year term for murder, which was *ineligible* for supervised release. Hernandez was physically released to mandatory supervision in 2003. Upon his release, Hernandez had served approximately seven years of the 18-year sentence for burglary and 10 years for murder. His supervision was revoked because of a new offense in 2004, and his final release date was calculated to be in 2014, which accounts for the remainder of his sentence on the burglary conviction. Hernandez has thus served the full sentence for the murder offense, for which he could never be released to supervision, and he partially served the burglary sentence in physical custody and was then released to supervision on that supervised-release-eligible offense. I fail to see how any contrary view of the law on the part of a prisoner would be of legal significance.

Hernandez concedes through counsel's supplemental brief that *Forward* resolves how Texas treats mandatory supervision eligibility for consecutive sentences for offenses that were committed pre- and post-1987. But he argues that the *Forward* approach could not have been applied to him in 1993 or 2004 because of the then-existing law. Hernandez then presents his purported legitimate expectation of finality in his sentences from the pre-*Forward* Texas state law. But the cases he cites do not contain the same factual or procedural posture present here, *i.e.*, consecutive sentences straddling the pre- and post-1987 supervised release laws, nor does he point to evidence of the state executing such consecutive sentences in the manner he advocates. *See Ex Parte Salinas*,

184 S.W.3d 240 (Tex. Crim. App. 2006); *Ex Parte Gabriel*, 56 S.W.3d 595 (Tex. Crim. App. 2001); *Ex Parte Millard*, 48 S.W.3d 190 (Tex. Crim. App. 2001); *Ex Parte Kuester*, 21 S.W.3d 264 (Tex. Crim. App. 2000); *Ex Parte Ruthart*, 980 S.W.2d 469 (Tex. Crim. App. 1998). The *Forward* court, which was aware of its own precedent, announced no change in either state law or the statutory construction of the supervised release statutes in light of precedent. The *Forward* court having said what the law is and was, Hernandez fails to meet his burden of showing a *legitimate* expectation in the finality of his sentences.

Because I find *Forward* to be dispositive of the issue here, I find no error in the district court's judgment and would affirm.