

# In the Court of Criminal Appeals of Texas

---

No. WR-44,786-06

---

EX PARTE RICHARD ANTHONY RIVERS,

*Applicant*

---

On Application for a Writ of Habeas Corpus
Cause No. 710442-D in the 178th District Court
From Harris County

---

YEARY, J., filed a concurring and dissenting opinion in which SLAUGHTER, J., joined.

The Court today addresses the two issues that we ordered this application be filed and set for submission to determine.[1] In doing so, it

---

[1] The two issues that the Court ordered this application to be filed and set for submission to determine were: (1) "whether the policy of not releasing an inmate to mandatory supervision on one concurrent sentence until the

orders the Texas Department of Criminal Justice (TDCJ) to follow this Court's prior holding in *Ex parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008), ultimately resulting in Applicant's continued custody for his ten-year concurrent sentence, subject to the Board of Pardons and Paroles' (BP&P) review for discretionary mandatory release (DMS). Majority Opinion at 10.

I agree that Applicant's continued confinement on this basis is correct, and I concur in the Court's denial of relief in the form of release from actual custody. But I dissent to the Court's qualified grant of relief—if "paper parole" is any relief at all—in this case. *See id.* at 9 ("This will be a 'paper parole'—a designation by TDCJ that Applicant is on mandatory supervision release on one of his convictions, but is not an actual, physical release of Applicant from TDCJ custody."). The writ of habeas corpus is an extraordinary remedy that is "to be used when any person is restrained in his liberty." Tex. Code. Crim. Proc. Art. 11.01. The way I see it, inaccurate TDCJ paperwork does not, in and of itself, equate to a restraint of liberty, and "The Great Writ" should not be demeaned to the status of a mere paperwork-fixing procedure.

Having determined that Applicant is not entitled to immediate release from confinement into constructive custody in the form of mandatory supervision, the Court should not go on to grant Applicant relief in the form of (essentially) only "constructive release" when such

---

inmate is eligible for release on all concurrent sentences is legal"; and (2) "whether the Court's decisions in *Ex parte Forward*, 258 S.W.3d 151 (Tex. Crim. App. 2008)[,] and *Ex parte Williams*, 257 S.W.3d 711 (Tex. Crim. App. 2008) are applicable." *Ex parte Rivers*, No. WR-44,786-06, 2021 WL 1395895, at *1 (Tex. Crim. App. Apr. 14, 2021) (not designated for publication).

relief does not go to either the fact or the duration of his restraint. To the extent the Court grants that qualified relief without even addressing questions with regard to cognizability and ripeness, I must dissent.

## I. APPLICANT SHOULD REMAIN LEGALLY INCARCERATED

The Court's disposition today orders TDCJ to immediately release Applicant for mandatory supervision on his thirty-five-year sentence. Majority Opinion at 10. It also orders TDCJ to "continue to calculate [Applicant's] time for this sentence and the sentences ordered to be served concurrently therewith in accordance with our holdings in *Forward*." *Id.* The result is that Applicant will continue to remain incarcerated due to his concurrent ten-year sentence, subject to review for so-called discretionary mandatory supervision (DMS), and that the duration of his confinement in the penitentiary will remain *wholly unaffected* by Applicant's constructive "release" from his first sentence.

I agree that this bottom-line outcome—continued confinement— is the correct one. Applicant's argument—that he must be released from confinement because he has attained mandatory supervision on his 35-year sentence, even though his concurrent 10-year sentence is subject to DMS, and the BP&P has not seen fit to exercise its discretion to release him on that sentence yet—has no merit. Applicant should, and will, remain in custody on his 10-year DMS sentence, subject to TDCJ's discretionary authority. But it seems to me that denying Applicant relief on that basis is all the Court should do.

## II. UNRESOLVED ISSUES GIVE ME PAUSE

I cannot agree with the Court's grant of "constructive release" on Applicant's 35-year sentence—at least not without further analyzing

several issues that trouble me about granting that kind of relief. Until such time that TDCJ's failure to recognize Applicant's entitlement to at least "constructive release"—from actual custody into constructive custody—on his 35-year sentence should somehow affect the BP&P's ability to properly exercise its discretion to grant him actual release into constructive custody on his 10-year sentence, then he arguably has nothing to complain about.

TDCJ's failure has not yet been shown to affect "the fact or duration of his confinement," and therefore Applicant's claim, at least arguably, presents a claim that is neither cognizable nor ripe for our consideration. *See Ex parte Harrington*, 310 S.W.3d 452, 456 (Tex. Crim. App. 2010) ("Under Article 11.07, a person who files a habeas corpus application for relief from a final felony conviction must challenge either the fact or length of confinement."); *Ex parte Alba*, 256 S.W.3d 682, 685 (Tex. Crim. App. 2008) (plurality opinion) (citing *Ex parte Lockett*, 956 S.W.2d 41, 42 (Tex. Crim. App. 1997), for the proposition that a claim for relief in a post-conviction application for writ of habeas corpus, to be cognizable, "must request a change of either the fact or the length of confinement").

The consecutive-sentence habeas cases do not necessarily counsel otherwise. It is true that in *Ex parte Williams*, 257 S.W.3d 711, 712 (Tex. Crim. App. 2008), the Court rejected an argument that was similar to Applicant's here: that he should be released on mandatory supervision when he became eligible on his first offense even though he was serving a consecutive sentence that was *not* mandatory-supervision eligible. Though we rejected Williams's argument, we still declared that he was

indeed mandatory-supervision eligible on the first offense, "grant[ing] relief as to that conviction." *Id*. It was important to do so there, in the context of consecutive sentences, because that would determine when the second sentence began to run for purposes of calculating Williams's eventual release date for the *combined* sentences. *See id*. ("TDCJ shall calculate his time for this sentence and the sentences ordered to be consecutively therewith in accordance with our holdings in *Forward*.").

Here, by contrast, the Court is not providing any actual relief to Applicant that is going to impact his release date from incarceration in this concurrent sentence situation. Declaring that Applicant is now "constructively released" from his first sentence will not have any effect on the timing of his ultimate release on DMS for the other sentence he is serving concurrently with it. The Court's action today does not impact how long Applicant will be ultimately be "restrained in his liberty" in the same way that ordering TDCJ to "classify" Williams as "eligible for mandatory supervision release" had a direct impact on determining the timing of his ultimate release from custody. Unlike with Williams's incarceration, "the fact and duration" of Applicant's incarceration is completely unaffected by the Court's grant of "paper parole" today.

I cannot say for certain that this distinction between consecutive sentences and concurrent sentences critically impacts such threshold issues as cognizability and ripeness. But I suspect it does, and I am certainly uncomfortable granting the qualified relief that the Court does today—in post-conviction habeas proceedings—without addressing these issues at all. *See Johnson v. Moore*, 77 N.E.3d 967, 968 (Ohio 2017) (holding that "any claim for immediate release is unripe" because the

maximum term had not yet expired); *Kelsey v. State ex rel. McManus*, 244 N.W.2d 53, 54 (Minn. 1976) (holding that "habeas corpus was not a proper remedy" for a petitioner claiming the Minnesota Corrections Authority violated his rights when he was refused access to his prison base file prior to a parole hearing, because petitioner was not entitled to immediate release if granted relief).

The Court has otherwise held, albeit in pre-trial settings, that habeas "is not appropriate when resolution of the question presented, even if resolved in favor of the applicant, would not result in immediate release." *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001), citing to *Headrick v. State*, 988 S.W.2d 226, 228–29 (Tex. Crim. App. 1999) (citing *Ex parte Ruby*, 403 S.W.2d 129, 130 (Tex. Crim. App. 1966), *Ex parte Matthews*, 873 S.W.2d 40, 43 (Tex. Crim. App. 1994)); *Ex parte Ruby*, 403 S.W.2d 129, 130 (Tex. Crim. App. 1966) (holding, pending appellate review, that "[t]he writ of habeas corpus is not available to secure a judicial determination of any question which, even if determined in the prisoner's favor, could not result in his immediate discharge."). Other jurisdictions have held that the same is true in post-conviction settings. *See Kelsey*, 244 N.W.2d at 54; *People ex rel. Porter v. Napoli*, 56 A.D.3d 830, 831 (N.Y. 2008) ("Habeas corpus relief is available only if an inmate can demonstrate that he or she is entitled to immediate release from prison. An inmate is not entitled to immediate release from prison until the expiration of his or her sentence.") (internal citations omitted). Today, the Court uncritically treats the Applicant's concurrent sentence situation as if it were completely controlled by our consecutive sentence jurisprudence, without first exploring key

threshold issues that will ultimately determine whether it is at all appropriate to utilize the extraordinary remedy of habeas corpus to grant the kind of "paper relief" it grants here.

### III. CONCLUSION

"The Great Writ" has come a long way from its humble beginnings, when post-conviction habeas corpus relief was available only upon an applicant's showing of a jurisdictional defect. *Brown v. Davenport*, No. 20-826, 2022 WL 1177498, at *6–7 (U.S. Apr. 21, 2022); *see also Ex parte Crispen*, 777 S.W.2d 103, 107 (Tex. Crim. App. 1989) (Clinton, J., concurring) (describing the Court's entertainment of the "burgeoning of claims raised in post-conviction writs of habeas corpus" after the United States Supreme Court "abandoned the fiction that habeas reached only jurisdictional defects . . .."). In this case, the Court utilizes it as a vehicle to justify ordering TDCJ merely to fix what it perceives to be faulty paperwork in Applicant's file. Because the writ of habeas corpus is an extraordinary remedy that should not be reduced to trivialities without at least a cursory analysis of issues impacting whether we should grant any relief at all, in this instance, I dissent.

**FILED:**　　　　　　　　　　May 18, 2022
**PUBLISH**